Filed 7/21/26  Marriage of Diaz and Zesati CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of EVANGELINA DIAZ and ALBERT ZESATI. | B338823, B343142 (Los Angeles County Super. Ct. No. 19PDFL00322) |
| EVANGELINA DIAZ, Respondent, v. ALBERT ZESATI, Appellant. | |

APPEALS from a judgment and order of the Superior Court of Los Angeles County, Harvey A. Silberman, Joel L. Lofton, and Patricia D. Nieto, Judges.  Affirmed in part, reversed in part.

Decker Law, James Decker and Griffin Schindler for Appellant.

Salisbury, Shaw, Lee & Tsuda, Serine Tsuda and Jason Jen-Sen Lee for Respondent.

_____

Albert Zesati appeals from the judgment and posttrial order in this marital dissolution action, contending the family court erred in granting Evangelina Diaz's motion in limine to exclude Zesati's exhibits at trial and denying Zesati's request for reimbursement of claimed separate property funds used to purchase the family home. Zesati also argues the court abused its discretion in issuing sanctions against him and erred in failing to address the distribution of certain property in the judgment. We conclude the court abused its discretion in imposing sanctions based on Zesati's decision to proceed to trial without documentary evidence of his reimbursement claims. We otherwise affirm the judgment and posttrial order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Petition for Dissolution and Pretrial Proceedings*

Diaz and Zesati were married on September 7, 2002. On February 25, 2019 Diaz filed a petition for dissolution of the marriage. The family court entered a judgment of dissolution on June 28, 2022, reserving property distribution issues for trial.

During the three-and-a-half years this case was pending before trial, Zesati repeatedly failed to comply with court orders regarding discovery and pretrial filings. In October 2019 the parties entered into a stipulation and order for Zesati to pay Diaz spousal support and child support for their three children. As part of the order, the family court ordered Zesati to produce documents in response to Diaz's discovery requests within

2

20 days without objection. After Zesati failed to fully comply, Diaz filed a request for order compelling Zesati to produce the documents. Zesati produced documents in September 2020. The production consisted of 31 documents, including two 2008 bank statements and tax returns going back to 2001.

In October 2021 the family court ordered the parties to attend a mandatory settlement conference (MSC) and informed them that "[a]ll documentary evidence along with witness lists and exhibit lists must be presented at the MSC or may be excluded from Trial." The case failed to settle at the MSC, and at a trial-setting conference in June 2022, the court again cautioned that documents not previously produced would not be admitted at trial. The court set the trial for October 18, 2022.

On October 4, 2022 Zesati's attorney, Ashley Andrews, moved to be relieved as counsel. The family court heard the motion on October 18, 2022 (which was intended to be the first day of trial). Andrews explained she was seeking to withdraw as counsel based on California Rules of Professional Conduct, rule 1.16(a)(1), which prohibits a lawyer from representing a client when the client is bringing an action "without probable cause for the purpose of harassing or maliciously injuring any person." The court asked Andrews if she felt personally threatened, and she replied, "I was terrified, your honor. At this point I'm terrified. My family is terrified."[1] After further discussion, Zesati agreed to release Andrews as his attorney. The court continued the trial to December 12, 2022 but clarified it was not extending the time to file pretrial documents.

---

[1] During trial, the family court recounted the October 18, 2022 hearing, noting that Andrews brought a bodyguard with her and "was physically shivering in the courtroom."

3

B.    *Diaz's Motion in Limine*

Zesati retained new counsel and filed a trial brief and exhibit and witness lists on December 5, 2022.  The exhibit list included 108 proposed exhibits.  Diaz filed a motion in limine seeking to exclude all of Zesati's exhibits and witnesses (other than for impeachment purposes) because the proposed exhibits included documents that had not been produced to Diaz by the September 2020 deadline and the exhibit and witness lists were not produced prior to the 2021 MSC.  Further, the exhibit and witness lists were not filed five court days prior to the initial trial date of October 18, 2022, as required by the Superior Court of Los Angeles County, Local Rules, rule 5.15(b).

At the outset of the trial on December 12, 2022 the family court heard argument on Diaz's motion in limine.  Zesati's counsel explained he had received an exhibit list from Andrews, but he did not know why Andrews had not filed it prior to the October 2022 trial date.  Zesati's counsel stated "many" of his proposed exhibits had been produced in discovery and others were documents that Diaz was aware of because she "had custody" of them during the marriage.  He argued Zesati would be unduly prejudiced if he could not present the evidence at trial.

The family court granted the motion in limine, excluding all exhibits beyond the 31 proposed exhibits produced and identified by Zesati in September 2020.

C.    *Evidence at Trial*

Diaz and Zesati were the only witnesses at trial.  As relevant to this appeal, the main issue at trial was division of the proceeds from the sale of the family home.  Zesati claimed he had used his separate funds to purchase the home, and he sought

4

reimbursement of his separate funds from the proceeds from the sale of the home pursuant to Family Code section 2640.[2]  Zesati also argued that approximately $100,000 in a bank account in his name belonged to his parents.

1.     *The family home*

Zesati testified that in 2011 he purchased a home at a foreclosure sale for approximately $569,000.  Title to the property was initially held by a trust; Zesati was the sole beneficiary.  In April 2012 Diaz, as trustee of the trust, signed a grant deed conveying the property to "Albert Zesati and Evangelina Diaz, husband and wife as joint tenants."  Zesati testified that he had removed Diaz as trustee of the trust prior to Diaz signing the grant deed and he did not know she had signed the grant deed.  However, Zesati admitted the couple refinanced the property in May 2012, and the deed of trust executed in connection with the refinance was signed by Zesati and Diaz and listed the "[b]orrower" as "Albert Zesati and Evangelina Diaz, husband and wife as joint tenants."  Zesati and Diaz sold the house in 2021, and the $1.1 million in proceeds were being held in a joint bank account awaiting the family court's distribution order.

Zesati testified the entirety of the $569,000 used to purchase the home came from money he had saved and invested long before the marriage.  Those funds were held in an account at Eastern International Bank.  Zesati stated he never deposited his salary into that account.  Zesati also earned income from investing in a bar with his cousin and by flipping houses.  During

---

[2]     Further undesignated statutory references are to the Family Code.

5

the marriage he earned approximately $200,000 from his investment in the bar. He lost money on some of his investments in houses, but he acknowledged he made approximately $43,000 on others. Zesati claimed he had used his separate funds from before the marriage to make these investments. Zesati did not have any documentary evidence to corroborate his claims.

Diaz testified Zesati never shared financial information with her. She deposited her salary into her own bank account during the marriage. She initially testified the funds used to purchase the family home had been earned and saved by Zesati and Diaz during the marriage; however, she later stated she could not be sure that all the funds used to purchase the house came from savings during the marriage. Diaz did not know the exact amounts that Zesati earned from his investments.

### 2. *The CIT bank account*

Zesati testified he had a bank account at CIT bank with a balance of $240,000. He was "100 percent certain" that $100,000 of the funds in the account belonged to his parents. His mother had received a $50,000 settlement from a car accident in 2012, and she had asked Zesati to hold the funds for her. Zesati could not recall whether he put the money directly into the CIT account or into another bank account first. Another $50,000 belonged to his father, which was his father's "life savings." Contrary to this testimony, Zesati stated in his deposition that "whatever is left in the CIT bank account" was what remained from the parties' cash-out refinance in 2012.

6

D.    *The Family Court's Ruling*

In its August 11, 2023 written order, the family court found the family home was community property, and the court denied Zesati's request for reimbursement of separate property pursuant to section 2640.  The court explained that when tracing separate property for purposes of reimbursement, "the evidence must be fairly exhaustive and be sufficient to establish not simply that separate property funds were available to make the payments but that they were actually used."  The court noted it had admonished Zesati that "some level of documentary tracing was necessary in most cases."

The family court recounted portions of Zesati's testimony, including that "[Zesati] testified that he began accumulating his separate property monies from the time he was a little boy selling oranges in the neighborhood.  He testified that by the time he married [Diaz] he had hundreds of thousands of dollars saved.  He testified that he earned additional money by flipping a house and investing in a bar during the marriage, but he considered these to be separate property earnings since he accumulated the funds for these investments during his childhood, teen years, and young adulthood.  He surmised that since the only community property monies were from the respective salaries of the parties, the community could not have contributed to the down payment on the residence since after payment of the community bills there was no community income remaining. . . ."

The family court explained that Zesati "did not supply a single piece of documentary evidence to support his claim. . . .  [Zesati] merely relied upon his testimony as to his accumulation of separate property income" prior to the marriage.  The court stated, "This attempt to prove up his [section] 2640

7

reimbursement claim without any records as evidence is generally not supported by the law." Accordingly, the court found the proceeds from the sale of the family home should be shared equally by the parties.

Regarding the CIT bank account, the family court similarly stated "there was no documentary evidence presented as to this matter" and "there was some testimony by [Zesati] at trial that contradicted his testimony at his deposition." The court noted it "had no reason to disbelieve [Zesati]; however, that does not eliminate [his] burden of proof regarding this matter. Considering the absence of sufficient evidence as to the origins of the funds in the account, the Court finds that [Zesati] has not upheld his burden of proof." The court ordered the funds in the bank account to be divided equally.

The family court also awarded sanctions to Diaz pursuant to section 271 based, in large part, on Zesati's "failure to acknowledge and settle the two major claims in the case, for which [Zesati] had no supporting evidence." The court recounted that it had, over the course of this case, "repeatedly stated that case law requires, in most circumstances, that some documentary evidence support [a section 2640] claim." On one occasion, Zesati's counsel had "stated on the record that there was no evidence available to support a number of the claims." Nevertheless, Zesati brought the case to trial absent any documentary evidence, causing Diaz "to expend substantial amounts of attorney fees in both preparing for the trial and conducting the trial." The court found Zesati had the ability to pay sanctions and awarded $27,000 to Diaz for "the hours spent in preparation . . . as well as actual trial time spent on meritless claims."

8

The family court entered judgment on February 7, 2024. Zesati moved for a new trial on February 13, 2024, and the motion was denied by operation of law on April 22, 2024. (Code Civ. Proc., § 660, subd. (c).)

E.  *Postjudgment Sanctions*

On June 3, 2024 Diaz filed a request for order seeking sanctions of $100,000 from Zesati pursuant to Code of Civil Procedure section 128.5 and Family Code section 271.  The request was based on Zesati's filing of a purportedly frivolous request for change in custody of the couple's children.  After a hearing on September 20, 2024, the family court granted the sanctions motion and issued sanctions against Zesati pursuant to section 271 in the amount of $9,500.  The court entered a written order awarding sanctions on October 17, 2024.[3]

F.  *Notices of Appeal*

Zesati timely appealed from the family court's February 7, 2024 judgment (case No. B338823) and from the October 17, 2024 order granting the sanctions motion (case No. B343142).

---

[3]  Judge Harvey A. Silberman presided over the trial but retired in early 2024.  Judge Joel L. Lofton conducted the sanctions hearing and granted the sanctions motion in September 2024.  The court's order after hearing was signed by Judge Patricia D. Nieto.

9

**DISCUSSION**

A.    *The Family Court Did Not Abuse Its Discretion in Excluding Evidence Not Identified or Produced by the Applicable Deadline*

"""""Generally, a trial court's ruling on an in limine motion is reviewed for abuse of discretion."""" (*Inzunza v. Naranjo* (2023) 94 Cal.App.5th 736, 742; accord, *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["As rulings on the admissibility of evidence, they are subject to review on appeal for abuse of discretion."].)  A ruling constitutes an abuse of discretion only if it is "'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; accord, *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.)

Where a party fails repeatedly and willfully to produce documents and violates court orders regarding discovery, preclusion of evidence may be an appropriate remedy.  (*Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 474; *Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1327; see also Code of Civ. Proc., § 2023.030, subd. (c) ["The court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence."].)

It is undisputed that Zesati failed to fully produce documents in response to the family court's order in October 2019 (requiring documents be produced by November 2019).  The court then cautioned Zesati that any evidence not produced by September 29, 2020 would be excluded from trial.  In response, Zesati produced 31 documents, after which the court reminded

him in October 2021 (prior to the MSC) and again in June 2022 that any documents he had not previously produced would be excluded at trial. Further, when the court on October 18, 2022 continued the trial date after Andrews's withdrawal, the court again clarified that it was not extending the deadline to file pretrial documents. Despite these repeated admonitions, Zesati's counsel filed witness and exhibit lists the week before the December 5, 2022 trial, identifying more than 70 previously unidentified documents as proposed exhibits. In addition, Zesati's counsel failed to provide any explanation for his failure to produce the documents earlier. He admitted that Andrews had given him an exhibit list when he was retained, but he failed to explain why it had not been filed prior to the initial trial date.

In light of Zesati's failure to comply with the court's orders to produce documents and the court's repeated warnings that failure to comply would result in exclusion of evidence, compounded by Zesati's failure to provide any explanation for his failure to produce the documents earlier, the family court did not abuse its discretion in granting the motion in limine and excluding documents Zesati had not produced by the initial September 2020 deadline. (See *Reales Investment, LLC v. Johnson, supra,* 55 Cal.App.5th at p. 472 [trial court did not abuse its discretion by excluding evidence not timely produced or identified pursuant to local rules].)

Zesati argues at length that the withdrawal of his attorney (Andrews) provided good cause for his failure to produce exhibit and witness lists five days prior to the initial trial date in October 2022, as required by the local rules. However, Zesati's focus on this deadline is misplaced. As the family court explained in its ruling on Diaz's motion in limine, the court had previously

11

ordered that any documents not identified by September 2020 would be excluded from trial.  Thus, even if Zesati's counsel had filed an exhibit list by the initial trial date, this would not have rectified Zesati's failure to produce documents by the deadline two years earlier, and he would still have been precluded from introducing evidence beyond the 31 documents he initially identified.

B.  *The Family Court Did Not Err in Applying Section 2640*
    1.  *Governing law and standard of review*
    "Family Code section 760 states the basic presumption that, except as otherwise provided by statute, all property acquired by a married person during marriage, while domiciled in California, is community property.  Each spouse has a 'present, existing, and equal' interest in the community property.  (§ 751.)  On the other hand, property acquired before marriage, or after separation, or at any time by gift, bequest, devise, or descent, is separate property.  (§§ 770, subd. (a), 771.)"  (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 91, fn. omitted.)  Section 2640 provides that where a party has contributed separate funds to the acquisition of community property, "the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."[4]  (§ 2640,

_____

[4]    Section 2640, subdivision (b), states in its entirety:  "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property

12

subd. (b); see *In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 273 (*McLain*).)

Whether the spouse claiming a separate property interest has adequately met his or her burden of tracing to a separate property source is a question of fact. (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1057-1058; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823.) We review the family court's factual findings for substantial evidence. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226; accord, *Cochran*, at p. 1058.) However, "'[i]n a case where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment [or order]." [Citations.] Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law."'" (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651; accord, *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979.) Where the issue on appeal turns on whether the trial court properly applied the governing law, we review the question de novo. (*In re Marriage of G.C. & R.W.* (2018) 23 Cal.App.5th 1, 23.)

---

source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

2.     *The family court applied the correct evidentiary standard to Zesati's claims for reimbursement*

Zesati argues the family court erred by denying his separate property reimbursement claims solely on the ground that he did not present documentary evidence.  While we agree with Zesati that documentary evidence is not required to prove a section 2640 claim, the court did not deny his reimbursement claim based solely on his failure to provide documentary evidence.

Section 2640 does not specify a particular methodology a party must employ to trace separate property, nor does it require specific types of evidence.  Typically, "tracing is done either directly, or by a process of elimination whereby a spouse shows the exhaustion of available community funds at the time of acquisition." (*In re Marriage of Stoll* (1998) 63 Cal.App.4th 837, 841.)  As the Supreme Court explained in *See v. See* (1966) 64 Cal.2d 778, 783-784 (*See*) with respect to a husband's claimed separate property interest, "The [community property] presumption applies when a husband purchases property during the marriage with funds from an undisclosed or disputed source, such as an account or fund in which he has commingled his separate funds with community funds.  [Citation.]  He may trace the source of the property to his separate funds and overcome the presumption with evidence that community expenses exceeded community income at the time of acquisition.  If he proves that at that time all community income was exhausted by family expenses, he establishes that the property was purchased with separate funds."  Furthermore, a "husband may protect his separate property by not commingling community and separate assets and income.  Once he commingles, he assumes the burden

14

of keeping records adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property." (*Id.* at p. 784.)

Some courts have interpreted the record-keeping language in *See* to mean that "tracing requires documentary proof because our Supreme Court has held records must be kept, and the point of keeping records is to offer them in court as evidence." (*McLain, supra*, 7 Cal.App.5th at p. 274.) However, we do not read *See* to establish such a rigid standard. The Supreme Court in *See* did not state that records "must be kept"; rather, it held the burden of adequately establishing a separate property reimbursement claim falls on the spouse asserting the claim. The court in *See* contemplated that such a burden could be met by "keeping records," but it did not hold that tracing separate funds can never be done without documentary evidence or that a separate property claim without documentary corroboration should be denied as a matter of law.

Moreover, although the Court of Appeal in *McLain* stated that "records must be kept," it went on to review the parties' trial testimony and found the "testimony does not provide substantial evidence for tracing Husband's separate property." (*McLain, supra*, 7 Cal.App.5th at pp. 274-275.) Other courts have similarly concluded that tracing separate property interests does not necessarily require documentary evidence. (See *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 25-27 [tracing did not require documentary evidence where the husband testified the bank account was a separate, non-commingled account]; *In re Marriage of Cochran, supra*, 87 Cal.App.4th at p. 1059 ["While ordinarily, in order to receive reimbursement, husband would be required to provide detailed records showing that separate property was used

15

[citations], in the instant case this was not necessary."]; see also *In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1423 ["[v]irtually any credible evidence may be used to overcome the general community property presumption"].) We agree with these courts that tracing separate funds without documentary evidence is generally exceedingly difficult, and that as a practical matter documents may be "required," but tracing may be proved by testimony alone.

Zesati contends the family court erroneously denied his reimbursement claim based solely on his failure to introduce documentary evidence to trace his separate property interest in the home purchase and CIT bank account funds. We disagree. The court explained its (correct) understanding that proving a tracing claim without documentary evidence is difficult, but it did not state unequivocally that this approach was prohibited. For example, the court's order repeatedly stated that documentary evidence was necessary "in most cases" and that proving a reimbursement claim without documentary evidence was "generally" not supported by the law. But the court also stated that it "retains the authority to consider any credible evidence and to evaluate alternative tracing methods." Further, the court recounted the testimony provided at trial, including Zesati's testimony he had saved thousands of dollars prior to the marriage and had used his separate funds to make investments during the marriage.

Although the family court found that in the absence of corroborating documents Zesati had not met his burden to prove his use of separate property to purchase the home or to trace his separate property within the CIT bank account, this does not mean the court relied solely on the lack of documentary proof.

16

The court was not required to believe Zesati's testimony, and it was free to give the testimony whatever weight it deemed appropriate under the circumstances.[5] (See *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 500 ["the trial court is the sole judge of the credibility and weight of the evidence"].)

C.    *Zesati Has Not Shown Error in the Family Court's Other Property Distributions*

Zesati contends the family court erred in failing to divide the contents of a Union Bank account between him and Diaz and instead awarding the entirety of the account to Diaz. However, prior to trial the parties entered a stipulation concerning certain assets, and the stipulation awarded the entirety of the Union Bank account to Diaz. Accordingly, there was no error.

Zesati also argues the family court failed to reallocate certain pretrial disbursements of community funds. In November 2020 the court authorized use of community funds to pay for the parties' living expenses. The court awarded $30,000 in community funds to Diaz and $15,000 to Zesati. On appeal, Zesati argues the court erred by failing to offset Diaz's award of community property with the $15,000 she received from

---

[5]    Zesati does not argue on appeal that his evidence compelled a finding in his favor as a matter of law (or that the family court's findings were not supported by substantial evidence). Accordingly, he has forfeited those arguments. (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [""When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].""].)

community funds in 2020 for living expenses. However, Zesati has not cited any authority for the proposition that living expenses paid from community property prior to entry of a judgment must be reimbursed. In fact, section 2040, subdivision (a)(2)(A), provides that the parties are entitled to use community property "in the usual course of business or for the necessities of life." Again, Zesati has not shown error.

D.      *The Family Court's Sanctions Awards*
        1.      *Governing law and standard of review*
        Section 271 provides with respect to family law matters, "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." (§ 271, subd. (a); accord, *Featherstone v. Martinez* (2022) 86 Cal.App.5th 775, 783 ["'Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel.'"].)

        Section 271 "imposes a 'minimum level of professionalism and cooperation,' to effect the policy favoring settlement of family law litigation—and a reduction of the attendant costs. [Citations.] Section 271 "'authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants" and "does not require any actual

18

injury." [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction.' [Citation.] Some courts have said the section authorizes attorney's fees and costs as a penalty for obstreperous conduct." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.)

We generally review an award of sanctions under section 271 for an abuse of discretion. (*Featherstone v. Martinez, supra*, 86 Cal.App.5th at pp. 783-784; *In re Marriage of Pearson* (2018) 21 Cal.App.5th 218, 233.) To the extent we are called upon to interpret section 271, including its notice and hearing requirements, our review is de novo. (*In re Marriage of Perow & Uzelac* (2019) 31 Cal.App.5th 984, 989; *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152.)

> 2. *The family court abused its discretion in awarding sanctions based on Zesati's failure to present documentary evidence at trial*

As discussed, the family court awarded Diaz $27,000 in sanctions based on Zesati's refusal to settle his reimbursement claims despite having no documentary evidence. However, the fact that Zesati did not prevail on his claims does not mean his position was "so devoid of merit that no reasonable person would have pursued it." (*In re Marriage of Abrams* (2003) 105 Cal.App.4th 979, 991 [trial court abused its discretion by imposing section 271 sanctions because parent "'unreasonably pursued an unmeritorious legal position'"], disapproved on another ground by *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1097.) Zesati was entitled to present his testimony at trial in an attempt to prove his separate property claims. Section 271

19

is not intended to shift the cost of litigation to a party simply because the party was unsuccessful. Where, as here, the party takes a reasonable but ultimately unsuccessful position, section 271 sanctions are not warranted. Accordingly, the family court abused its discretion in awarding sanctions against Zesati under section 271 for proceeding at trial without documentary evidence.

> 3. *The family court did not err in imposing sanctions for Zesati's emails to Diaz's counsel*
>> i. *Additional background*

As discussed, on June 3, 2024 Diaz filed a request for order seeking sanctions under section 271 based on Zesati's filing of a purportedly frivolous request for change in custody of the couple's children. On August 5 Diaz filed a request for order seeking to have Zesati declared a vexatious litigant. In her declaration in support of the vexatious litigant request, Diaz's attorney, Serine Tsuda, stated that in September 2022 Zesati sent her "an email containing veiled threats," "made it known that he knew my home address," and listed the name of Tsuda's husband and her direct telephone number. Tsuda stated the overall tone and context of the email was threatening, referencing Zesati's "life in the 'GHETTO housing projects' and his 'very scary experiences' there." Tsuda also recounted that when the family court asked Zesati about this email during a hearing in June 2023, Zesati invoked his Fifth Amendment privilege against self-incrimination. Zesati again included Tsuda's home address, her husband's name, and her husband's business address in July 2024 emails to the Internal Revenue Service (IRS) and

Franchise Tax Board alleging misconduct by Tsuda. Tsuda was copied on the emails.

The family court set a hearing on both requests for September 20, 2024. During the hearing, the court stated at the outset that it did not believe the standard for declaring a person a vexatious litigant was met as to Zesati. However, the court said it was "concerned" about the September 2022 email Zesati sent to Tsuda listing her home address. The court stated to Tsuda, "To my mind, there's no other purpose . . . to add your husband's name and your address other than to intimidate you . . . [T]o me, of all of the activity from [Zesati], that's the only activity that I think is actionable." The court later explained that it was "looking at" sanctions under section 271 to address the emails.

The family court then addressed Zesati, who represented himself at the hearing, and invited him to "comment or give context . . . as to why you would send an email to counsel with her home address and her husband's name for any purpose other than trying to intimidate her." Zesati stated that Tsuda was the agent for service of process for her husband's business, which was public record. He said he included the information in his emails to the IRS and Franchise Tax Board because "she should be investigated to see what other illicit activity she's involved with. Because I can almost guarantee that she's involved in other illegal activity." The court responded, "So, I'm listening, and . . . your testimony is . . . actually just increasing my belief that you are trying to intimidate her." The court explained that it appeared the only reason Zesati included the personal information in the emails was "to let [Tsuda] know, 'I've researched public records. I've found out where you live. I've

21

found out your husband's name. I've found out where your husband works. I want you to know that I have this information on you. . . . That's the way I view it. So I'll give you another opportunity to tell me why that view is wrong." Zesati failed to explain why he had included the personal information in the emails, instead responding that he believed he was being mistreated and would not get a fair hearing. He added that he intended to place Tsuda and Diaz "under citizen's arrest for perjury."

The family court interjected, "I gave him an opportunity to dissuade [me from] what I believe to be a threat. He's enforced it. So it was a threat." The court then asked Tsuda what she believed would be an appropriate sanction. Tsuda requested approximately $20,000 in section 271 sanctions to cover Diaz's postjudgment attorneys' fees. The court gave Zesati an opportunity to address the amount of sanctions, to which he responded, "I should be sanctioned absolutely zero . . . dollars for this," reiterating why he should not be sanctioned. After considering Zesati's ability to pay, the court awarded $9,500 in sanctions against Zesati.[6]

---

[6] Diaz requests we take judicial notice of documents filed in a separate action in which she sought a civil harassment restraining order against Zesati, which she asserts included evidence regarding Zesati's behavior immediately after the September 20, 2024 hearing. We deny the request because the documents are not relevant to our resolution of this appeal.

*ii. The family court provided sufficient notice prior to imposing sanctions*

Zesati contends the imposition of sanctions was improper because he did not receive advance notice of the specific grounds and conduct on which sanctions would be based. In particular, he argues that because the intimidating emails were referenced in the vexatious litigant motion, but not the motion for sanctions, he was not aware he faced sanctions based on the intimidating emails. Zesati had sufficient notice.

Section 271, subdivision (b), requires that sanctions "shall be imposed only after notice by the requesting party or the court to the party against whom the sanction is proposed and opportunity for that party to be heard is provided by the court." However, section 271 does not specify the type of notice or how far in advance notice must be given. Zesati relies on *In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417 for the proposition that sanctions may not be based on conduct for which the sanctioned party had no advance notice. *Quinlan* does not support his position. In that case, the husband filed a written request for sanctions against the wife's attorney pursuant to Code of Civil Procedure section 128.5, which, like Family Code section 271, requires notice of the alleged grounds for sanctions and an opportunity to be heard. (*Quinlan*, at pp. 1420-1421.) The family court awarded sanctions against the wife in connection with the husband's oral motion for sanctions based on the wife's attorney's ""'unorthodox and wholly improper conduct'" at the hearing, not for the grounds articulated in the husband's written motion. (*Id.* at p. 1421.) The court's order imposing sanctions recited that the sanctions were imposed for the wife's

delay with respect to her motion on visitation and her filing of an untimely peremptory challenge.  (*Ibid.*)

The Court of Appeal reversed the sanctions order, concluding the request for sanctions made at the hearing "was not specific enough to give counsel a clue as to how to respond," and further, the grounds cited in the family court's written order "were not asserted as a basis for sanctions by either [the husband] or the judge, at any time before rendition of the sanctions order. . . .  [C]onsequently, [counsel] had no reasonable opportunity to respond since he could not have known of the *need* to respond as to those grounds."  (*Quinlan, supra*, 209 Cal.App.3d at p. 1421.)  However, the court clarified that when sanctionable conduct occurs or comes to light during a hearing, a trial court is not required to schedule a separate hearing for a later date: "[S]uch a requirement would inhibit the imposition of sanctions by busy judges on a motion calendar for whom a separate hearing might not be worth the extra trouble.  Additionally, requiring a separate hearing would increase the amount of the sanctions that are awarded to compensate the opposing side for its attorney fees."  (*Id.* at p. 1422.)  Accordingly, "if the court gives clear warning from the bench of the anticipated grounds for sanctions, or if the moving party does so, and counsel is given an adequate opportunity to present an oral response, due process concerns are satisfied."  (*Id.* at p. 1423.)

We agree with the reasoning in *Quinlan* that the notice requirements of section 271 can be satisfied during a hearing so long as the sanctioned party is told the specific grounds of the potential sanctions and is given an opportunity to respond.  That procedure was followed in this case.  The family court explicitly and repeatedly told Zesati that it was considering sanctions

based on the three emails in which Zesati included counsel's personal information.  The court also repeatedly gave Zesati an opportunity to respond, requesting that Zesati explain why he included counsel's personal information in the emails.  Zesati never stated that he needed additional time to respond, nor did he argue that the notice was insufficient.  Zesati therefore had sufficient notice of the grounds for sanctions and was provided a meaningful opportunity to respond.

## DISPOSITION

The $27,000 sanctions award in the February 7, 2024 judgment against Zesati is reversed.  The judgment is otherwise affirmed.  The October 17, 2024 sanctions order is affirmed.  The parties are to bear their own costs on appeal.

FEUER, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

25